**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LEROY MINER,**

                  **Plaintiff,**              1:06-CV-0439
                                                              (GLS\GHL)

           **v.**

**GLENN S. GOORD; WILLIAM GORMAN;
ROBERT DENNISON; MELVIN WILLIAMS;
THOMAS O'CONNOR and JANICE SMITH,**

                **Defendants.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of Alex Smith                 ALEXANDER J. SMITH, ESQ.
6 North Street
Middletown, New York 10940

Office of Robert N. Isseks          ROBERT N. ISSEKS, ESQ.
6 North Street
Middletown, New York 10940

**FOR THE DEFENDANTS:**

HON. ANDREW CUOMO            BRUCE J. BOIVIN
New York Attorney General         Assistant Attorney General
The Capitol
Albany, New York 12224

**Gary L. Sharpe
U.S. District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Pending is defendants' motion for summary judgment.  Leroy Miner has brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his rights under the First Amendment.  For the reasons that follow, the motion is granted and the entire case is dismissed.

### **II. Facts**

Miner was formerly an inmate in the custody of the New York Department of Correctional Services (DOCS).  He was convicted in 1997 for the crime of burglary in the third degree and sentenced to an indeterminate term of 2 to 4 years.  (*Def.'s SMF* ¶1; *Dkt. No. 25.*)  Thereafter, Miner elected to participate in the DOCS' shock program, a boot camp style program which allows eligible offenders to earn release on parole supervision in six months.  (*Id.* at ¶2.)  Following his release on parole, Miner was arrested in Pennsylvania.  *(Id.* at ¶3.)  Miner served a Pennsylvania sentence during which New York lodged a detainer against him, but New York eventually released him to parole supervision again.  (*Id.* at ¶3.)  Next*,* Miner was arrested in the State of Florida, which precipitated another parole revocation procedure in New York.  (*Id.*)

2

As a shock graduate, once Miner violated the conditions of his parole release, the controlling state regulations provided the Division of Parole with three options: (1) restore Miner to parole supervision; (2) restore Miner to the Willard Drug Treatment program("Willard"), or (3) reincarcerate him for at least a period of time equal to the minimum period of imprisonment imposed by the court.  (*Id.* at ¶4.)  Miner elected to enter  Willard, though he contends that he did so under pressure from the attorney representing him at his final parole revocation hearing.  (*Id.* at ¶5.)

After Miner agreed to enter Willard, but before he arrived there, he decided that the program "was religious in nature."  (*Id.* at ¶6.)  He then wrote letters to the Commissioner of the Division of Parole, his attorney, the Division of Parole's Peekskill Area Office, the Parole Appeals Unit, and the Office of the Attorney General, expressly stating that his letter was not an appeal, and requesting that his sentence "be modified to time served 90 days" because he objected to entering Willard due to its religious nature. (*Id.* at ¶6.)  In addition, Miner also stated he did not need substance abuse treatment.  (*Id.*)

This request was denied. *(Id.)*  Miner then perfected an appeal from the revocation of parole, in which he raised no religious objections to

Willard. (*Id.* at ¶7.) The appeal detailed Miner's argument that his parole was improperly revoked. (*Id.*) Since Miner had pleaded guilty at his final hearing, these arguments were waived, and the decision was affirmed. (*Id.* at ¶7.)

On November 23, 2004, Miner arrived at Willard. (*Id.* at ¶8.) On November 29, he received orientation. *(Id.)* Parole Officer Thomas O'Connor conducted the orientation and described the program requirement including the work crews, meetings with drug and alcohol treatment teams, education components, and physical training. (*Id.* at ¶9.) At the end of the orientation, parolees were asked to sign a memorandum of agreement, indicating their willingness to participate in the program. (*Id.* at ¶10.) Miner refused to sign the memorandum stating he was an atheist. (*Id.* at ¶11.) O'Connor explained he would be given twenty-four hours to reconsider his refusal, after which the parole violation process would commence. (*Id.*)

Thereafter, Miner again refused to sign the memorandum, and O'Connor recommended the issuance of a parole violation warrant. (*Id.*) Miner was charged with violating his conditions of release by refusing to enter Willard. (*Id.* at ¶11.) On December 7, 2004, a preliminary hearing

4

was held by Janice Smith, who was then a Senior Parole Officer, "to determine whether there [was] probable cause to believe" that Miner violated conditions of release.  (*Id*. at ¶15.)

At the hearing, O'Connor testified and proffered as evidence the violation of release report that he prepared.  (*Id*. at ¶16.)  In addition, Miner presented evidence, in the form of legal argument and case law citations, to explain his rationale for refusing to sign into the Willard.  (*Id*. at ¶18.)  At the end of the preliminary hearing, Smith found probable cause to support the charge.  (*Id*. at ¶18-19.)

On January 26, 2005, a final hearing was held before the Division of Parole's Administrative Law Judge.  (*Id.* at ¶20.) On cross examination, Miner admitted that he was never directed to participate in any of the religious components of the program.  (*Id*. at ¶21.)  He also stated the materials he found objectionable were given to another parolee, and were never given to him.  (*Id.*)  At the conclusion of the hearing, the ALJ reserved decision and thereafter sustained the charge that Miner failed to enter Willard.  (*Id*. at ¶22.)

### III. Discussion

**A.     Standard of Review - Motion for Summary Judgment**

For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle,* 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### B.     *Heck/Balisok* Bar

The defendants argue Miner is challenging the validity of confinement, not the length of his confinement, thus the case is barred by the "favorable termination rule" set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok,* 520 U.S. 641 (1997).  The Supreme Court has determined that an inmate, who implicates the invalidity of his conviction or sentence in a § 1983 action, must first demonstrate his sentence or conviction has been reversed or invalidated by another tribunal, or called into question by the issuance of a federal habeas corpus petition.  *See Heck v. Humphrey*, 512 U.S. at 486-487.  In *Huang*, the Second Circuit stated:

> In light of our holding in *Leather*, and in light of both the *Spencer* majority's dictum and the fact that the *Spencer* concurrences and dissent 'revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,'..., we conclude that [plaintiff']s Section 1983...claim must be allowed to proceed.

*Huang v. Johnson*, 251 F.3d 65,75 (2d Cir. 2001)(citation omitted).  *See*

6

*Rolle v. Connell*, No. 9:05cv991, 2005 WL 3077474, * 3 (N.D.N.Y. Nov. 16, 2005) (While dismissing the case, Chief Judge Mordue noted that plaintiff's release from incarceration might enable him to file a §1983 action since habeas was not available absent plaintiff being in custody.); *See also Tapp v. Tougas*, No. 9:05-cv-1479, 2008 WL 4371762, at * 1 n.1(N.D.N.Y. Sept.18, 2008) (Chief Judge Mordue finding the *Edwards* rule did not bar suit since former inmate was not attacking the validity of his confinement and it was unclear if he had already served his sentence such that *habeas corpus* was no longer an available remedy.).

In this case, since Miner filed the complaint after his release, the suit is not clearly barred.

### C.     **First Amendment/Establishment Clause**: **Standing**

Defendants contend that Miner lacks standing because he has not suffered an injury. Arguing to the contrary, Miner contends he had to serve an additional nine months in prison for refusing to participate in a religious drug treatment program. Miner asserts his extra time in prison is his "injury" for standing.

The Supreme Court has "clarified that a federal court generally may not rule on the merits of a case without first determining that it has

7

jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31 (2007).  Standing is "an important component of the Article III jurisdictional limit of federal courts to decide 'cases' or 'controversies.'" *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 85 (2d Cir. 2006) (citations omitted). "But the essence of standing 'is not a question of motivation but of possession of the requisite... interest that is, or is threatened to be, injured by the unconstitutional conduct."  *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.*,  454 U.S. 464, 484 (1982). The Second Circuit has noted:

> The Supreme Court has called Article III standing perhaps the most important of the case-or-controversy doctrines placing limits on federal judicial power.  More fundamental than judicially imposed, prudential limits on the exercise of federal jurisdiction is the core component of standing derived directly from the Constitution.  A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

*Alliance,* 436 F.3d at 85 (citations and quotations omitted).  As the Second Circuit noted, "[b]efore 1998, federal courts, including. . .[this] Circuit, occasionally assumed the existence of jurisdiction and proceeded directly

8

to the merits of a case in circumstances where the jurisdictional issue was close or complicated and the plaintiff's claim on the merits could be easily rejected." *Id.* at 85 (citation omitted). The Supreme Court has substantially ended this practice, ruling instead that a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits. *See Id.* at 85 (citation omitted). Accordingly, the court now turns to the standing issue.

As mentioned, Miner argues that he has standing to sue because the defendants' conduct caused him to serve nine extra months in prison. Miner's contention is without merit. After having violated parole, Miner had a choice of serving ninety days at Willard, or serving his full term of incarceration. He initially elected to attend Willard, but thereafter changed his mind. While he had the right to change his mind, regardless of his reason, the extra time he spent in prison was not caused by the defendants. Accordingly, Miner has failed to demonstrate he has standing.

Alternatively, even if the court were to find that Miner had standing,

9

his claim is mertiless.[1]  Nothing in the record indicates defendant coerced Miner to participate in the program.  *See Lee v. Weisman*, 505 U.S. 577, 587(1992).  In addition, it appears that Miner simply wanted to serve ninety days without any drug treatment.[2]  This option was unavailable to him.  While he did not receive the benefit of serving a shorter sentence while attending Willard, it would appear he did not want treatment anyway.  After his refusal/objection, Miner was returned to serve the remainder of his sentence, the only remaining option.  Accordingly, Miner has failed to demonstrate that his rights were violated.

### D.    Personal Involvement

The defendants argue they were not personally involved in any violations of Miner's constitutional rights.  Personal involvement of a defendant in an alleged constitutional deprivation is "a prerequisite to an award of damages under § 1983."  *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (internal quotations and citation omitted).  A supervisory

---

[1] O'Connor and Smith are the only defendants involved in the First Amendment violation.

[2] "This Parolee respectfully requests that the above stated sentence to the 'Willard Program' be modified to time served 90 days, which would substanially[sic] equal to the incarceration time of the above sentence."  See *Miner letter dated October 23, 2004; Def.'s Ex. A; Dkt. No. 23.*

10

official is only liable for constitutional violations if he: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (citing *Williams*, 781 F.2d at 323-24 ). "Furthermore, a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

"[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). The fact that Miner may have written a letter does not automatically render the supervisory official responsible for a constitutional violation. *See Thomas v. Coombe*, No. 95 Civ. 1034, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (citations omitted) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof). Moreover, prison supervisors

11

cannot be deemed personally involved based simply on a response to a complaint.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

### 1.  **Robert Dennison**

Miner contends that Dennison, the former Chairman and Executive Officer of the Division of Parole, received an October 3, 2004 letter concerning the Willard assignment.  Miner claims Dennison failed to properly supervise his parole officers and created a custom/policy where a constitutional violation occurred.  Miner's claims are without merit.

Miner's bald assertions are insufficient to show the personal involvement of Dennison.  First, Miner was not at Willard when the letter was written.  In addition, the record demonstrates that the letter was not even addressed to Dennison.  Without more, Miner's accusation that Dennison failed to supervise his subordinates is insufficient to show his personal involvement.  Accordingly, Dennison is dismissed for lack of personal involvement.

### 2.  **Melvin Williams**

Miner contends that Williams, as the Superintendent of Willard, had an obligation to provide alternatives to inmates with religious objections.  In addition, Miner claims that Williams created a policy which permitted

12

unconstitutional practices to occur.  These conclusory allegations are insufficient to show the personal involvement of Williams.  Nothing in the record demonstrates that Williams communicated with Miner or forced him to participate.  Accordingly, Williams is dismissed for lack of personal involvement.

### 3. Remaining defendants Goord and Gorman

Based on Miner's concession, defendant Goord and Gorman are dismissed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment is granted and the complaint dismissed in its entirety; and it is further

**ORDERED** that the Clerk enter judgment and close the case.

**IT IS SO ORDERED**.

Albany, New York
Dated: January 21, 2009

*/s/ Gary L. Sharpe*
United States District Court Judge